Good morning, Your Honor, and may it please the Court, Michael Marks, Federal Defenders for Ms. Urias. My client was convicted by a jury that never got to hear relevant and admissible evidence that somebody else might have convicted or might have committed this offense. That was an error under the rules of evidence, it was an error under the Constitution. With regard to the evidentiary problem, the District Court first has to determine de novo whether the District, this Court has to determine de novo whether the District Court picked out the right rule, and it didn't. This case has, this Court has said over and over that fundamental standards of relevancy is the right rule to determine whether or not third-party culpability comes in. And the District Court clearly relied on a different standard, a California standard of substantial evidence, and in addition to that said this evidence shouldn't come in because it's too speculative. This Court has said in Armstrong, Crosby, Stever, Vallejo that the fundamental standards of relevancy controls, that the rules of evidence speak for themselves, and indicated that the District Court is not to say this is too speculative, it's for the jury to determine whether or not the third-party culpability evidence is too speculative. So let me ask you, Mr. I think we do, you know, let's assume that that Ignatius wasn't properly decided for a moment. The trial judge here, when he made his evidentiary ruling, I think he said something to the effect, the standard is very, very, very low. It just, evidence just doesn't meet that very, very, very low standard. What was he doing? I don't know exactly. He was trying to characterize his evidentiary ruling. To say that it was very, very, very low is all well and good. The question is, did he pick out the right rule? He clearly thought, he said, this evidence has to be more than relevance. He said it's not just relevance, it's whether there's substantial evidence. So whether he thought that that was a low standard or a high standard, it was the wrong standard, and he was requiring my client to produce more evidence than he should have. And, you know, think about what this evidence shows. The government has argued that this is harmless. It's clearly not a harmless error. In order to get methamphetamine from Mexico into the United States and make a profit, you need to know some things. You need to know how to get the methamphetamine, how to get it across the border safely, what to do with it, how to sell it once you get into the United States. That's what this evidence would have shown. The fact that this person had a connection not only to California and Los Angeles, where, by the way, Ms. Sirius would have been headed, according to the receipts in her car, that he had connection to drug dealing, that he had connection to methamphetamine, that he had attempted to cross methamphetamine across a very similar point in the border in the past, and then he took off right after she was arrested. So it answers that question that the court keeps asking, this court keeps asking in all of these cases. If your theory is, I don't know, the jury is going to ask, well, if you don't know, who does? That was the problem in Crosby, that was a problem in Vallejo, that was the problem in Stever. Excluding the defendant from answering that question is error. It's error under the rules and it's error under the Constitution. And that's what she wasn't allowed to do. She had a good answer for that question. I don't know if the court has any concerns about the evidentiary rule. Well, I don't, I was going to ask you, I'm a little mystified by why this Facebook page became a major issue of contention, meaning I don't really know what you'd need it for. You have the actual convictions. I think it's very questionable, that Facebook page. It doesn't have his name on it even, right? It had a... It's a very odd document. It not only doesn't say he, but it says he in brackets? That was the translation. What do you mean it was a translation? Where did the brackets come from? I believe the government added the brackets. I don't, I don't recall. What I can say about this, Your Honor, is in reading the transcript, I had the same question that you did. Why was there so much argument about that Facebook page? Yeah, I mean, why did they care? I mean, can't we just forget about it? On the ground that, with or without it, there was evidence that it was a convicted methamphetamine, you know, transporter and moreover, it was removed from the United States. I mean, we can argue about that. I guess there's some argument whether that should have independently come in on an evidentiary basis, because there's a 404B argument. But to me, that the Facebook thing is, from your point of view, very questionable and who needs it? Frankly, Your Honor, I think it's kind of, it's kind of the fifth leg of the table. I would, I think it had some relevance. It showed that this person maybe hadn't left this life behind. It showed, again, the connection to California. But I think you're right. In many ways, it was redundant. We had the convictions that showed that he was, in fact, a drug dealer on the streets of Los Angeles, that he had, in fact, been convicted of methamphetamine. And certainly, without the other evidence, it's not enough. I mean, I think the other evidence is enough to get over the harmlessness problem, even if the court were to rule that it should have been excluded. So, no, I don't think the court should get bogged down in the Facebook page. Your Honor, you mentioned 404B, and I think that's an interesting point. In reviewing the record, the court never actually excluded this evidence under 404B. The district court mentioned a number of times that it had concerns about the propensity argument, or that the jury might get stuck with propensity. As, Your Honor, you wrote in Stever, to the extent that there was any danger that there was a propensity inference here, the court could have instructed that away. And certainly, in the cases that I've cited in Armstrong, Crosby, Vallejo, Stever, all of them, there's always going to be some danger of propensity, I think, when you're arguing that somebody else committed a crime because of some other stuff that they did in the past. I mean, that's always going to be present. But what I think the court made clear in McCourt, Cruz-Garcia later, is that when you're dealing with 404B, and it's the defense as the proponent of the evidence at the court, as long as it's not just pure propensity, should sort of bend over backwards to let this stuff in. And the reason is, there's no constitutional concern that a defendant is going to be convicted based on something he did before, rather than the evidence before him. That concern has vanished. And in fact, in Cruz-Garcia, one of the concerns was, well, this is a witness. Is this going to allow the jury to discredit a witness just based on propensity? But here, we weren't even talking about a witness. We're talking about a next-door neighbor who had fled. There was no prosecution. There wasn't a witness for either the government or the defendant. So, this was the case where the court really should have done everything it could to allow Ms. Urias to present her defense. It said, I'm bending over backwards to do that, but it didn't. I just, I had trouble figuring out what the concern, the district court's concern was here. Why was this not something that the jury was perfectly capable of evaluating? How exactly did these evidentiary rulings come about? I mean, my understanding is that the district judge's position was, none of this is coming in, period. So, how did these particularized evidentiary questions get raised and decided or alluded to? Well, how it happened was, there was a witness on the stand testifying about the neighbor. And the district court had... Basically said, you can't testify about the neighbor, period, the end. Well, there was some testimony about the neighbor, and there was testimony about the fact that he shared a door with Mr. Urias. And the district court shut down questioning when the defense tried to admit photos of the neighbor. And then what they did is, they went through during a conference outside of the presence of the jury, they went through all of the particular pieces of evidence that the defense wanted to admit. And they talked about photos, they talked about the Facebook page, they talked about the prior convictions. And ultimately, what the district court said was, you know, I have concerns about some of these pieces of evidence, but ultimately, I just don't think this is a relevant theory. I don't think you have enough evidence connecting this person to the offense. So, for purposes of this case, essentially, the way to think about it, perhaps, is the mega ruling is, you can't have evidence about this neighbor. And maybe this comes in at the homelessness stage in a sense of, well, if this, that, the other thing couldn't have come in anyway, then it goes to the homelessness question. I think that's right. It doesn't... He hasn't satisfied Hinkson's step one, so the court has to rule he abuses discretion. And then the only question is, can the government meet its burden of showing that this evidence could not have come in otherwise and would not have made a difference had it come in? I think that's the right way to look at it. You wanna save your time for rebuttal? Yes, Your Honor. Thank you. Okay. Good morning, Your Honors. May it please the court. Colin McDonald for the United States. The district court here reasonably exercised its discretion to exclude specific pieces of evidence that would have supported a third party culpability defense. As I recall, when defense counsel got up to make his summation, and he wanted to make this argument, there's nothing he could point to. Well, Your Honor... There was nothing there. There was evidence that was admitted with respect to the neighbor. So the court did allow Ms. Urias to produce evidence of third party culpability. But when that evidence that was supporting that claim turned incompetent, was inadmissible, the court said no. So there were some facts... Wait a minute. Are you saying that he was not admissible applying this Ignacio standard? Did he make that ruling? The district court did both. Both, he said, even assuming these specific pieces of evidence are admissible, I don't find that there's a sufficient link between this third party and the defendant. And you're defending both pieces? Yes, we are defending both pieces. And I'll note for the court that the court had already made that decision. He had already made that decision under the before the United States offered the substantial evidence test in the first place. The court looked at Armstrong and Crosby first and said, well, in that case, there's a link between the third party. In Armstrong, the bank robber, the third party, had bait bills from the bank robbery in his pocket and used them the day after the robbery to buy $3,000 to buy a car. In Crosby, the third party was the husband who had previously assaulted the wife and who was upset that she wasn't there. And she says that he says, she says here that this neighbor disappeared, wasn't there? Yes, there was that. And that was admitted. The court allowed that evidence to be admitted on ER 230. That came in. And also that they were right next to each other on the block. I don't understand. I thought he said that she couldn't point to this person at all. Well, at the point at which the Facebook page was attempted to be introduced, the defense had already admitted a variety of evidence about the neighbor, that he looked. One of the statements was one of the witnesses says that the neighbor's appearance didn't seem right. It didn't inspire confidence or trust in him. So they basically said, one, the neighbor looks creepy. And then they said that he lives right next door and that he vacated the house apparently shortly after the event. But they weren't able to show that he had a prior record. No, they did not show that. Where's the content? I mean, just because you have a creepy neighbor, that's not going to get you any place. Right. Is that all she got in? Is that really all she got in? A creepy next door neighbor? That's not a defense counsel. No, no, it's not. It would it would not be a defense. But the the I think the point that I'm attempting to make is that the district court allowed third party culpability evidence to come in. But at the point. But that's it. That's it. Just a I'm not trying to give you a hard time. I want to make sure I understand, because that's how I read the record. That's it. That's all she had. And that and that is right. And the reason is because they could not authenticate and they did not have a way to admit the other evidence that would have supported. It's fine for them to have a general broad theory of ability. They have to be able to actually admit the evidence that distinguishes what he said. He's ruling he that he what he's he's saying that he's just not allowing it because it's based entirely on speculation. Well, I'll know, for instance, on the Facebook page on with regard on on ER 247, 247, the court's conclusion is that there's absolutely no authentication of the Facebook page that links it to this neighbor. Let's forget the Facebook page. Let's just take everything else. Okay. The only other thing, the only other thing is the criminal criminal rap sheet. And and the deportation. And the deportation. There's no documents whatsoever. Well, I don't know how they were going to even produce this evidence or admit the evidence. All they had was a rap sheet. That's a different problem. It's not based at the basis of the ruling unless I'm on ER 266. Is this the wrong place? There's there's a number of places throughout the record where the court looks specifically at the pieces of evidence and excludes them individually. But then and then also more generally. Are they TT1, U, V and W? Are those the right exhibits? Yes, that's right. There's a document in the record. He says in short, I think it's entirely based on speculation. I have no competent evidence to support it. The admission of TT1, U, V and W is denied. I sustain the objection. Yes. And the objection was based upon this speculation. Well, the the the pivotal sentence there, your honor. And actually, this is this is significant, is that middle sentence. I have no competent evidence to support it. So with regard to the criminal history, the only they didn't provide any facts about his underlying importation charge. It looked maybe like this neighbor had a prior importation charge. There are documents in the record on the conviction. What's wrong with those? There are no conviction documents in the record. What were those documents? The only the only document is the rap sheet you're talking about. Right. The rap sheet, the rap sheet itself, which which I don't know how they would admit that into evidence. But they and the court even asked, I believe it's at maybe 251. The court asked, do you have conviction documents? And no one ever responded to that. That inquiry from we've had a myriad of cases in which the government has come in with exactly this document to prove convictions. I mean, in immigration cases and so on. Well, and further, what the court did is he said, I don't know how a conviction from 2001 shows motive or opportunity. So I had a had a smugglement. Well, the problem with that, Your Honor, is that the record doesn't show that. And in most of these cases, the defense says, I'm just a mere courier. I had no idea what the drugs were. We don't know if this neighbor knew what the drugs were. We don't know if he was a mere courier. We don't know if he carried them across in a backpack. We don't know if he drove them across in a car. We know nothing about the underlying facts. And the court's case law shows that. But we're not trying to convict the neighbor. I'm sorry. We're not trying to. You would have a real problem if you were trying to convict the neighbor, but you're not. We are not. But the case law says that when you are attempting to show a non-propensity purpose under 404B, the acts have to be sufficiently similar that the fact of the conviction alone does not show that he has a source of supply of methamphetamine. The fact that he crossed methamphetamine, possibly, and that was on a 50-50 shot that a 20-year-old driver's license fellows mentioned. What about the notion that I mean, the 404B usually goes has to do with a witness or a defendant, right? This person is neither. Right. Right. So why does the 404B even apply to this? Well, it applies equally to the defense and to the prosecution. And so the court probably. But it's not related to, as Judge Berzon just said, it's dealing with a witness, right? That's right. And we're not dealing with the defendant. We're not. So what's at play here is this third party. I mean, the whole problem with 404B has always been precisely that it really is relevant and people feel, and the reason why it's being excluded is exactly because it's going to have people's general assumption is that people do again what they did before. And there are instances in which that's a very unfair assumption. But in this instance where you're not dealing with the credibility of a witness, you're not dealing with a defendant, you're dealing with a pure relevance question. Why isn't it relevant and why does 404B have anything to do with it? Well, Vallejo itself, for instance, says ordinarily evidence of another person's similar arrest may be too remote. So in other words, it shouldn't come in. But here in Vallejo. May be too remote. I'm going to ask you why 404B applies. Well, I think the case law is clear and I don't have the specific sites, but I'd be happy to provide them to the court that even in these other cases, the court does a 404B analysis in this circumstance where a defendant is trying to prove that someone else did a bad act before and thus he did the bad act again later. That is propensity. That is strictly prohibited by Rule 404B. And so that's where the court says, I don't, the court was concerned with the jury saying, well, I don't want the jury to be able to say he did it once before so he's good for it again. I'm just wondering why not in this context. Well, if there was a proper 404B basis, the court was clear that he would have admitted the evidence. But with regard one to motive, the court said, how does a 15-year-old conviction show motive to commit the offense? It doesn't follow. That doesn't follow. It's not like Crosby where the husband, the third party, was upset at the wife for having an affair. Similarly with opportunity, the defense suggests that he had the opportunity, he had a source of supply of methamphetamine, but that doesn't follow either, that in 2001 he had, you know, methamphetamine in his car. We have no idea what the circumstance is. And I would look, I would ask my friend to point the court to the record where we know any facts about the underlying case from the 2001 conviction. Now, with regard to the, to the harmless, to the harmlessness, well I'll, with regard to the harmless standard, this is different than the set of cases, Armstrong, et cetera, because the underlying evidence, the criminal history that we've just discussed, there's no 404B basis for it. The probative value of it is so slim under those circumstances that it was properly excluded. And that's just, that's just a question of whether the court reasonably exercised its discretion. But that's not the question. The question is if it came in, would it be harmless? If it didn't, if I'm not, your argument is that it was harmless because it wouldn't have come in, but let's assume it would have come in, then what? Let's assume it would have come in. Then it would have, it would have shown that there was an individual with a 15, possibly the neighbor, because the only reason this criminal history was linked to this neighbor was on a 20-year-old driver's license photo that linked to a rap sheet that had multiple aliases. The name and the rap sheet name was provided by the unauthenticated Facebook page that had a different name than both of the convictions that they wanted to introduce that they didn't have conviction records for. So the probity of that evidence was so low in the long run, they couldn't show that this third party had a source of supply of methamphetamine. They couldn't show that he, how he crossed the drugs before, whether it was in a backpack, whether he was a body carrier, whether he drove it in. They don't have any, none of those facts are on the record. So even if that criminal history got in and even if they could show that it actually was the neighbor's, which that was doubtful. And gather that they had, they were proposing to put on the neighbor's wife to testify? They were proposing that they would put on the neighbor's wife to say, and the proffer essentially was that she had gone to this, this defendant's school. But that must have meant she was going to come and testify. I'm sorry? Was that meant that she was going to come testify? I, I think that was the suggestion. They said, what if we got the wife to say that she had gone to the store before? Right. I mean, you could get other stuff from the wife, presumably. But one of the problems is you cut the whole thing, you know, short. So you never really found out exactly what was going on. Well, no, the district court allowed them, this spans about 30 pages of the transcript, but the district court's going back and forth with them and saying, give me more evidence. Give me something. I'm setting a very, very low, very, very low bar. That's in his words. I'm straining to let you get this in. Show me, was he ever lurking by the car? He just let it in. Well, that, you know, I mean, the question is whether it was being here today. We would not be here. That is true. It's just so much easier. I always wonder about that. Why did you fight it so much if it didn't matter? Why did he not let it in? Let it in. It's not, you know, you have a pretty strong case. I understand, Your Honor, and we would not be here. I see that as a fact. You know, after Stever opinion, a very long time U.S. attorney saw me and said, you know, essentially, we always fight this stuff and we shouldn't pay. I understand. In the end, we would just point the court to the specific evidentiary decisions of the court as those two pieces of evidence and would contest that those were reasonable exercises of the court's discretion. Thank you, counsel. We appreciate your arguments. Do we have a minute for rebuttal, Mr. Marks, to wrap up? Thank you, Your Honor. A couple of quick points. The government conceded below at the request of the district court that the person in the Facebook page was the same person that had the prior conviction for importation of methamphetamine, that had the prior conviction for marijuana, that had been deported. I don't think there was any question that that evidence was going to come in somehow. How it would have gotten in, whether there were certified convictions, AFILE documents, I don't know. Never got the opportunity because the district court cut us off before we could ever get there. With regard to the similarity of the facts of the prior methamphetamine conviction, it's the same drug. It's at a port of entry about five miles away from where my client was arrested. The jury gets to decide whether or not that's enough weight to call question, whether or not that was enough to cause reasonable doubt or not. It's really not for the judge to decide that up front. That was the error here. Unless there are further questions, I would submit. Okay. Thank you, Mr. Marks. Matter submitted. Thank you, counsel.
judges: Paez, Berzon, Christen